```
                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

```
JOHN WESLEY BANKS,                )
                                  )
          Petitioner,             )
                                  )
          v.                      )
                                  )   Civil Action No. 04-918
PENNSYLVANIA BOARD OF             )   Chief Judge Donetta Ambrose/
PROBATION AND PAROLE, THE         )   Magistrate Judge Amy Reynolds Hay
DISTRICT ATTORNEY OF THE          )
COUNTY OF ARMSTRONG, and THE      )
ATTORNEY GENERAL OF               )
PENNSYLVANIA,                     )
                                  )
          Respondents             )
```

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that the petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be denied.

It is further recommended, however, that a certificate of appealability be granted, limited to the following 2 issues: (1) Whether the 1996 amendment to the Pennsylvania Parole statute, resulting in the current 61 P.S. § 331.1, violates the ex post facto clause and if so, what is the significance of the Pennsylvania Supreme Court's decision in Winklespecht and its progeny in light of its holding that the amendment worked no substantive change; and (2) Whether the interpretation or application of the amendment by the Board violated the ex post facto clause and whether post-Winklespecht and its progeny that interpretation or application has been remedied such that post-

<u>Winklespecht</u> and its progeny, the Parole Board's interpretation or application can no longer violate the ex post facto clause?

II. <u>REPORT</u>

In this habeas action, John Wesley Banks ("Petitioner") a convicted third degree murderer, claims that as a convicted parole violator, the Pennsylvania Board of Probation and Parole ("the Board") has violated his constitutional rights by retroactively applying new statutory amendments to deny him parole and also erred in recalculating his sentence after his parole was revoked. Because he received parole hearings after the Pennsylvania Supreme Court decided <u>Winklespecht v. Pennsylvania Board of Probation and Parole</u>, 813 A.2d 688 (Pa. Dec. 31, 2002), his ex post facto claims about the standards applied to him are meritless insofar as the Pennsylvania Supreme Court made clear that the amendments did not change the standards for granting parole. As to his challenges to various procedural changes wrought by the 1996 amendments to the parole statute, such procedural changes do not violate the ex post facto guaranty. As to his claim that the Parole Board erred in calculating his new maximum sentence, that claim was pending before the Commonwealth Court at the time he filed the instant federal habeas petition but has since been decided adverse to him. Because he fails to show that the Commonwealth Court's disposition of that claim is contrary to or an unreasonable application of United States Supreme Court law or is otherwise subject to attack under AEDPA, that claim should be denied.

### A.   Relevant Facts and Procedural History[1]

Petitioner's habeas petition and papers in support are not very clear.  The following is what the court gleaned from the record.

Petitioner was convicted of third degree homicide and was consequently sentenced to 10-20 years.  It appears that the effective date of the sentence was October 16, 1976.  Doc. 1 at 3; Doc. 12, Ex. C (indicating original date of minimum sentence's expiration was 10/16/86).  Upon the expiration of his minimum, i.e., October 16, 1986, Petitioner was released on parole.  Doc. 12, Ex. F at 5.  Apparently, he was twice released on parole and twice recommitted by the Board to serve backtime on his third degree murder sentence as a result of either being a technical or convicted parole violator.  While on parole the second time from the third degree murder conviction, Petitioner again committed another crime, namely, driving under the influence and he was convicted of this crime.  Petitioner was arrested for this DUI charge on March 16, 2001, and posted bail on March 17, 2001.  Doc. 12, Ex. G at 2.  On March 21, 2001, the Board lodged a detainer against Petitioner pending disposition of the DUI criminal charge.  Id.  On June 8, 2001, the Parole Board revoked Petitioner's parole again on the third degree homicide sentence and ordered that he be required to serve backtime of 9 months as

---

[1]  This case was originally filed in the Middle District wherein Petitioner was and is incarcerated.  The Middle District transferred the case here apparently because his convictions arose here.

a technical parole violator.  Id.  On October 23, 2001,
Petitioner pleaded guilty to the DUI charge and was convicted and
sentenced to serve 48 hours of imprisonment.  Id.  On April 9,
2002, the Board ordered that Petitioner be recommitted to serve 6
months of backtime on his third degree murder conviction
consecutive to the 9 months ordered to be served as a technical
parole violator.  Id.  In the Board's April 9, 2002 order of
recommitment, the Board recalculated Petitioner's maximum
expiration date on his third degree murder conviction to be
August 23, 2006.  Id.  Petitioner contends that this
recalculation was erroneous and illegally extended his judicially
imposed sentence beyond the 20 year length of time originally
imposed, in violation of his due process and equal protection
rights.  Subsequent to the recommitment ordered by the Board on
April 9, 2002, and as pertinent here, the Board twice denied
Petitioner reparole; first, on August 21, 2002 and next on April
16, 2003.[2]  Petitioner alleges that these two parole denials
violated his ex post facto rights in two ways.  First, pursuant
to the 1996 amendments to the Pennsylvania parole statute, the
Board applied a heightened standard for the grant of parole.
Second, his ex post facto rights were violated by the procedural
changes which Petitioner attributes to the 1996 amendments, such

_____

[2]  Subsequent to the filing of this habeas petition, the Board
again denied Petitioner parole on September 30, 1994.  Doc. 14,
Attachment 14 (Petitioner's "Green Sheet").

as a change in the frequency of parole consideration and a change in the number of members who make up the Board.

The Respondents filed an answer with exhibits.  Doc. 12. Petitioner filed a traverse, Doc. 13, and supplemental attachments.  Doc. 15.

B.   **Relevant Principles of Habeas Corpus Review**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA) which amended the standards for obtaining federal habeas relief was effective April 24, 1996.  Because Petitioner's habeas petition was filed after the effective date of AEDPA, AEDPA is applicable to this case.  Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

AEDPA prohibits habeas relief unless the Petitioner shows that the State Courts' adjudication of his federal claims constituted a decision (1) that was contrary to or an unreasonable application of United States Supreme Court precedent extant at the time of the State Courts' adjudications or (2) that made an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  See also Woodford v. Visciotti, 537 U.S. 19, 25 (2002)("it is the habeas applicant's burden to show that the state court applied Strickland [v. Washington, 466 U.S. 668 (1984)] to the facts of his case in an objectively unreasonable manner."); Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)("a habeas petitioner must show that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court"); Ward v. Sternes, 334 F.3d

696, 709 n.3 (7th Cir. 2003)("A petitioner may also attack a
state court's adjudication on the grounds that it is based 'on an
unreasonable determination of the facts,' § 2254(d)(2), but such
attacks are accompanied by a rigorous burden of proof: state
court factual findings are presumed to be correct unless the
petitioner rebuts the presumption with 'clear and convincing'
evidence. § 2254(e)(1).").

    **C.**   **Discussion**

    Petitioner appears to raise three distinct claims.  First,
Petitioner claims that his parole denials on August 21, 2002 and
on April 16, 2003, violated his rights under the ex post facto
guaranty of the United States Constitution by applying the
allegedly more stringent standards for granting parole that
Petitioner contends were enacted by the Pennsylvania legislature
in its 1996 amendments to the Pennsylvania parole statute.
Petitioner relies on <u>Mickens-Thomas</u>, 321 F.3d 374, 383-84 (3d
Cir. 2003)("<u>Mickens-Thomas I</u>") in support of this claim.

    Relatedly, Petitioner contends that the procedural changes
allegedly enacted by the Pennsylvania legislature in those same
1996 amendments also violated his ex post facto rights.  Those
procedural changes include (1) changing the frequency of parole
consideration from once every six months to once a year; (2)
providing for a victim advocate; (3) a new classification for
violent offenders; (4)the requirement for an affirmative vote of
3 of 5 Board members in order to grant parole and; (5) requiring
parole applicants to write out the history of their crimes.

Lastly, he complains about the Board's recalculating his maximum expiration date for his third degree murder sentence.  He alleges that the Board erred in its calculation on April 15, 2002 when it recalculated his maximum to be August 23, 2006.

### 1.  Ex Post Facto claims

Petitioner appears to raise two ex post facto claims.  The first concerns the allegedly changed standards for granting parole, which purportedly emphasize public safety.  The second concerns the procedural changes.

### a.  The Denials of Parole did not violate ex post facto

Petitioner claims that in its August 21, 2002 and April 16, 2003 denials of parole the Board applied to him the amended version of the parole statute, 61 P.S. § 331.1,[3] which was

---

[3]  The 1996 Amendment, Act of 1996, Dec. 18, P.L. 1098, No. 164, read in pertinent part as follows (the material following and preceding the "-" sign was deleted from the prior version of the statute and the material following and preceding the "+" sign was added by the amendment):

Section 1. Section 1 of the act of August 6, 1941 (P.L. 861, No. 323), referred to as the Pennsylvania Board of Probation and Parole Law, is amended to read:

<< PA ST 61 P.S. § 331.1 >>

Section 1. <<-The value of parole as a disciplinary and corrective influence and process is hereby recognized, and it is declared to be the public policy of this Commonwealth that persons subject or sentenced to imprisonment for crime shall, on release therefrom, be subjected to a period of parole during which their rehabilitation, adjustment and restoration to social and economic life and activities shall be aided and facilitated by guidance and supervision under a competent and efficient parole administration, and to that end it is the intent of this act to create a uniform and exclusive system for the administration of parole in this Commonwealth.->> <<+The parole system provides several benefits to the criminal justice system including the

amended in 1996 after he had committed his crimes.  He complains

that this violated his ex post facto rights under the federal

constitution, essentially because the amended version of the

statute makes it harder to get parole.  In this particular claim,

Petitioner appears to be complaining solely of that part of the

1996 Amendment which changed Section 1 of the Parole statute that

added language which mandated, inter alia, that "the board shall

first and foremost seek to protect the safety of the public." See

Doc. 1 at 4 ("Rules of December, 1996, as interpreted by the

Board as requiring more emphasis on Public safety at the expense

of Petitioner[']s liberty interest . . . ).

> As the Court of Appeals has so succinctly explained:

> The Ex Post Facto clause of the United States
> Constitution applies to a statutory or policy change
> that "alters the definition of criminal conduct or
> increases the penalty by which a crime is punishable."
> A new law or policy violates the Ex Post Facto clause
> (1) when it is retrospective, i.e., when it "appl[ies]
> to events occurring before its enactment," and (2) when
> it "disadvantage[s] the offender affected by it."

Mickens-Thomas, 321 F.3d 374, 383-84 (3d Cir. 2003)("Mickens-

Thomas I").  Moreover, "cases dealing with the ex post facto

clause are clear that whether a statute is retrospective is

_____

> provision of adequate supervision of the offender while
> protecting the public, the opportunity for the offender to
> become a useful member of society, and the diversion of
> appropriate offenders from prison.+>>
>     <<+In providing these benefits to the criminal justice
> system, the board shall first and foremost seek to protect
> the safety of the public. In addition to this goal, the
> board shall address input by crime victims and assist in the
> fair administration of justice by ensuring the custody,
> control and treatment of paroled offenders.+>>

(footnote omitted).

measured from the time of the conduct which forms the basis of the criminal charge." <u>United States v. Parriett</u>, 974 F.2d 523, 526 (4th Cir. 1992).  Petitioner's claims appear to rest on a contention that the 1996 amendment to the Parole statute violated the ex post facto clause.  Petitioner relies upon <u>Mickens-Thomas I</u>.

In <u>Mickens-Thomas I</u>, apparently the Board chairman and public Board policy statements indicated that the Board understood the 1996 amendment to the parole statute to have changed the standards under which the Board was to consider granting parole to prisoners, in essence, making the standards harder to grant parole.  See <u>Mickens-Thomas I</u>, 321 F.3d at 391 ("the evidence before us shows that the Board interpreted § 331.1 to mandate foremost the consideration of public safety. The Board mistakenly construed the 1996 statutory change to signify a substantive change in its parole function. As we noted previously, a public statement of the Board chairman and Board policy declaration confirm this substantive change in Board policy.")(citation omitted).

However, subsequent to the Board's decision in denying parole to Mickens-Thomas, the Pennsylvania Supreme Court, the final arbiter of the meaning of Pennsylvania law,[4] held that the 1996 amendment, resulting in the current 61 P.S. § 331.1, had not

---

[4] <u>Gruber v. Owens-Illinois Inc.</u>, 899 F.2d 1366, 1369 (3d Cir. 1990)("In interpreting state statutes, decisions of the state's highest court are binding upon us. *Commissioner of Internal Revenue v. Estate of Bosch*, 387 U.S. 456, 465 (1967)").

worked any substantive change in the parole statute or standards

for the Board.  <u>Winklespecht v. Pennsylvania Board of Probation

and Parole</u>, 813 A.2d 688 (Pa. 2002).[5]  Although in <u>Mickens-

---

     [5]     While <u>Winklespecht</u> was a plurality opinion, a majority of
the Pennsylvania Supreme Court in <u>Finnegan v. Pennsylvania Bd. of
Probation and Parole</u>, 838 A.2d 684, 687 (Pa. Dec. 18, 2003) adopted
the holding of <u>Winklespecht</u> that the amendment worked no substantive
change in the standards for granting parole.  Moreover, the
Commonwealth Court had applied the <u>Winklespecht</u> plurality decision as
the rule of law in Pennsylvania as early as June 16, 2003.  <u>See</u>, <u>e.g.</u>,
<u>Byrd v. Pennsylvania Bd. Of Probation and Parole</u>, 826 A.2d 65, 68 (Pa.
Cmwlth. 2003).
     The Court is aware that the Pennsylvania Supreme Court has
recently overruled <u>Finnegan</u> in <u>Cimaszewski v. Bd. of Probation and
Parole</u>, 868 A.2d 416, 427 (Pa. Feb. 24, 2005).  However, <u>Cimaszewski</u>
did not overrule that part of <u>Finnegan</u> which stated that the 1996
Amendment itself did not change the parole law insofar as the
standards were the same before and after the amendment given that
"[a]lthough the phrases 'protect the safety of the public' and 'assist
in the fair administration of justice' were added in 1996, these
concepts have always been underlying concerns" of the parole statute
before the 1996 amendment.  <u>Finnegan</u>, 838 A.2d at 688.  Rather,
<u>Cimaszewski</u> overruled <u>Finnegan</u> only "[t]o the extent that <u>Finnegan</u>
failed to comport with the reasoning of <u>Garner [v. Jones</u>, 529 U.S. 244
(2000)]  and [<u>California Dept. of Corrections v.] Morales</u>[, 514 U.S.
499 (1995)] . . ."  As noted, one of <u>Finnegan</u>'s holdings was that, as
a matter of the State Supreme Court construction of state law, the
1996 amendment did not work a substantive change in the parole
statute.  The <u>Cimaszewski</u> court's overruling of <u>Finnegan</u> to the extent
inconsistent with <u>Garner</u> and <u>Morales</u> could not effect this holding of
<u>Finnegan</u> on the meaning and construction of a state law, in light of
the fact that <u>Garner</u> and <u>Morales</u> had nothing to say about the meaning
of the 1996 amendment to the Pennsylvania parole statute.  Rather,
<u>Cimaszewski</u> overruled <u>Finnegan</u> to the extent that it held that even
the Board's application of that amendment could not violate the ex
post facto clause.  <u>See</u>, <u>Cimaszewski</u>, 868 A.2d at 427:

          Therefore, under <u>Garner</u> and <u>Morales</u>, the 1996 amendment may
          be shown to violate the ex post facto clause if an inmate is
          able to demonstrate that the 1996 amendment, as applied to
          him, creates a significant risk of prolonging his
          incarceration. To the extent that <u>Finnegan</u> failed to comport
          with the reasoning of <u>Garner</u> and <u>Morales</u> in this regard,
          <u>Finnegan</u> is hereby overruled.

(emphases added).  Essentially, the Court's analysis in <u>Cimaszewski</u>
turns on the distinction between an ex post facto facial challenge to
the 1996 Amendment and an ex post facto as applied challenge to the
1996 Amendment, i.e., a challenge to the Board's understanding and
application of the 1996 amendment.  <u>See</u>, <u>e.g.</u>,  <u>Henderson v. Scott</u>,

Thomas I the Parole Board brought the Winklespecht opinion to the
attention of the Third Circuit Court, that Court found
Winklespecht to not have any impact on its decision regarding
Mickens-Thomas's appeal because the Board did not have the
benefit of the Winklespecht opinion when it rendered its decision
denying Mickens-Thomas parole, and more significantly, the Board
had publicly indicated that it understood the 1996 amendment to
the parole statute to have worked a substantive change in the law
contrary to the subsequent holding in Winklespecht.  In rejecting
the Board's attempt to argue that Winklespecht required the Court
of Appeals to deny Mickens-Thomas's habeas petition, the Court
reasoned in Mickens-Thomas I as follows:

> This decision [i.e., Winklesprecht], made after
> the Board's actions on Thomas's parole, came too late
> to alter the Board's view of the statutory amendment on
> the outcome of this case. Not having the benefit of the
> Supreme Court decision, the evidence before us shows
> that the Board interpreted § 331.1 to mandate foremost
> the consideration of public safety. The Board
> mistakenly construed the 1996 statutory change to
> signify a substantive change in its parole function.
> See Gall v. Parker, 231 F.3d 265, 304 (6th Cir. 2000).
> As we noted previously, a public statement of the Board
> chairman and Board policy declaration confirm this
> substantive change in Board policy. The Pennsylvania
> Commonwealth Court too understood the 1996 amendment to
> enact a substantive change in Board policy. See
> Stewart, 714 A.2d at 508; Myers, 712 A.2d at 799. The
> Board's actions and policy pronouncements demonstrate a
> marked added weight on public safety concerns,

---

260 F.3d 1213 (10th Cir. 2001)(analyzing both facial and as applied ex
post facto challenge to parole statute).  Significantly, the denials
of parole in the Cimaszewski case, all occurred before the
Pennsylvania Supreme Court's decision in Winklespecht, (the last
denial occurring in February 2002 see Cimaszewski, 828 A.2d at 420)
unlike the second denial of parole which is being challenged in this
case that occurred on April 16, 2003, after Winklespecht.

uninfluenced by the subsequent Court interpretation of
the statute.

Mickens-Thomas I, 321 F.3d at 391.

     As the foregoing passage makes clear, the narrow holding of

Mickens-Thomas I is that the Board's policies, i.e., its

understandings/interpretations/applications of the 1996 statutory

amendment violated the ex post facto clause, not the 1996

Amendment itself.  Indeed, in the face of the definitive

construction of the 1996 Amendment by the Pennsylvania Supreme

Court[6] that the 1996 Amendment wrought no substantive change in

the parole standards, it would seem difficult to conclude that

the Amendment itself constituted an ex post facto violation where

the ex post facto analysis requires that there be a change in law

or policy.  See Mickens-Thomas I, 321 F.3d at 383 ("The Ex Post

Facto clause of the United States Constitution applies to a

statutory or policy change . . .").  Mickens-Thomas I clearly

held only that the Board's policies after the 1996 statutory

amendment changed and such a change constituted a violation of ex

post facto protections.  Hence, to the extent Petitioner's

present challenge is directed at the 1996 statutory amendment

_____

     [6] Neither this court, nor even the United States Supreme Court,
has the authority to overturn a state supreme court's construction of
a state statute.  See, e.g., Albertson v. Millard, 345 U.S. 242, 244
(1953) ("The construction given to a state statute by the state courts
is binding upon federal courts.").  Therefore, in order to find that
the 1996 amendment itself violated ex post facto rights of potential
parolees, a federal court would be required to find that the 1996
amendment, resulting in the current 61 P.S. § 331.1, worked a change
in the prior state law directly contrary to the State Supreme Court's
holding that the amendment worked no change in the state statutory
standards for parole.  This, federal courts may not do consistent with
the constrictions of the Federal Constitution.

itself, Petitioner fails to merit relief under the ex post facto clause because the 1996 amendment, resulting in the current 61 P.S. § 331.1 wrought no change in the law.  <u>Winklespecht</u>; <u>Finnegan v. Pennsylvania Bd. of Probation and Parole</u>.[7]

Even if Petitioner is not challenging the amendment itself, but merely the Board's interpretation or application of the amendment, his claim still fails.  The court concludes that because Petitioner's April 16, 2003 parole denial occurred post-<u>Winklespecht</u>, he cannot now mount a successful ex post facto challenge to either the August 21, 2002 denial or the April 16, 2003 denial of parole.  Unlike in <u>Mickens-Thomas I</u>, where "[t]he Board mistakenly construed the 1996 statutory change to signify a substantive change in its parole function" because it did not have the benefit of the Pennsylvania Supreme Court's construction of the parole statute in <u>Winklespecht</u>, here, the Board rendered its decision on April 16, 2003, post-<u>Winklespecht</u> and therefore, was fully informed of the proper standard and hence did not

---

[7]  The court is aware of the characterization by a panel of the Third Circuit Court in an unpublished case that "Mickens-Thomas clearly holds as a legal matter that the Pennsylvania **statutory** change violates the *Ex Post Facto* Clause."  <u>Hollawell v. Gillis</u>, 65 Fed.Appx. 809, 816 (3d Cir. 2003) (emphasis added).  It is not clear that this remark is anything more than dicta.  However, even if it is not dicta, as <u>Hollawell</u> is an unpublished case of the Court of Appeals, it is not binding precedent.  <u>Fallon Elec. Co., Inc. v. Cincinnati Ins. Co.</u>, 121 F.3d 125, 128 n.1 (3d Cir. 1997).  As such, it constitutes merely persuasive authority, i.e., it is authoritative to the extent that it is persuasive.  After careful analysis of the language and reasoning of <u>Mickens-Thomas</u>, which is a binding precedent, this court respectfully finds the characterization in <u>Hollawell</u> to be unpersuasive.  We find that the holding of <u>Mickens-Thomas</u> is that the policies of the Board violated the ex post facto guaranty, at least in pre-<u>Winklespecht</u> denials.

improperly apply a heightened standard in violation of the ex
post facto clause.  The Board, having applied the proper standard
and Petitioner still having been denied parole, he cannot show
that his rights under the ex post facto clause were violated.
For any potential violation of his ex post facto rights in the
Board's prior parole denials, as for example in the August 21,
2002 denial, if there were in fact any ex post facto violation,
all the relief this court could grant would be a remand to the
Parole Board for it to reconsider him under the proper standard
that did not violate the ex post facto clause.  See Mickens-
Thomas v. Vaughn, 355 F.3d 294, 310 (3d Cir. 2004)("Mickens-
Thomas II")("The only remedy which the court can give is to order
the Board to correct the abuses or wrongful conduct within a
fixed period of time, after which, in the case of non-compliance,
the court can grant the writ of habeas corpus and order the
petitioner discharged from custody").  Here, Petitioner received
that very thing in the Parole Board's April 16, 2003 denial of
his parole, i.e., a determination that he was not entitled to
parole under the standards that existed before the 1996
Amendment, which the Winklespecht court made clear were, as a
matter of state law, the very same standards that were to be
employed after the 1996 Amendment.  In light of this, Petitioner
has not established that the Board engaged in an ex post facto
violation in its April 16, 2003 denial of parole so as to merit
the grant of relief.  See Furman v. Martinez, NO. 3:CV 03-1807,
2005 WL 1532984, *3 (M.D. Pa. June 28, 2005)("except for

-14-

individuals whose parole decisions were made after the adoption

of the 1996 changes, and before *Winklespecht* clarified the fact

that the amendment did not change the administration of parole

policies, subsequent parole reviews are made with the

understanding that the 1996 amendments did not change the

analysis used in the parole proceedings."); <u>Wilson v. Wilson</u>, NO.

CIV.A. 04-5194, 2005 WL 331487, *5 (E.D. Pa. Feb. 9, 2005)("the

August 2004 Board decision occurred well after the Pennsylvania

Supreme Court's decision in *Winklespecht*. Unlike the Board in

*Mickens-Thomas*, the Parole Board in this case had the benefit of

guidance from the Pennsylvania Supreme Court and was aware, prior

to its decision, that the 1996 amendment did not change the

analysis to be used in parole proceedings. Thus, the Parole Board

was aware that it should not 'demonstrate a marked added weight

on public safety concerns.'"); <u>Flecha v. Klem</u>, NO. 2:04-

CV-04164-RK, 2005 WL 272971, *7 (E.D. Pa. Feb. 2, 2005)("the

November 21, 2003 Board decision occurred well after the

Pennsylvania Supreme Court held in *Winklespecht* that the

rewording of 61 P.S. § 331.1 did nothing to alter the factors

that the Board should consider or affect the Board's broad

discretion in the parole decision. *Winklespecht*, 813 A.2d at

691-692. Unlike the Board in *Mickens-Thomas*, the Parole Board in

this case had the benefit of guidance from the Pennsylvania

Supreme Court and was aware, prior to its decision, that the 1996

amendment did not change the analysis used in parole

proceedings."); <u>Fripp v. Superintendent Meyers</u>, No. Civ. A. 03-

CV-4942, 2004 WL 1699071, *10 (E.D. Pa. July 28, 2004)("An appropriate extension of the *Mickens-Thomas* holding would, therefore, be that, since Petitioner in the case *sub judice* is contesting a parole determination that occurred on May 17, 2002, five months after *Winklespecht* clarified for the Board how it should interpret the language change, there was no longer any danger that the Board inappropriately interpreted the post 1996 policy statement to require application of a harsher standard than that applied pre-1996."); Johnson v. Lavan, No. Civ.A. 04-00860, 2004 WL 1291973, *4 (E.D. Pa. June 11, 2004)("Unlike the Board in *Mickens-Thomas*, the Parole Board in this case had the benefit of guidance from the Pennsylvania Supreme Court [in *Winklespecht*] and was aware, prior to its decision, that the 1996 amendment did not change the analysis used in parole proceedings. Consequently petitioner's ex post facto claim fails."); Holton v. Pennsylvania Bd. of Probation and Parole, No. Civ.A. 04-703, 2004 WL 1175562, *2 (E.D. Pa. May 26, 2004)(rejecting ex post facto challenge, reasoning that "[h]ere, Holton was last reviewed for parole on October 2, 2003, well after the Parole Board had the benefit of the *Winklespecht* decision. Thus, the Parole Board was aware that it should not 'demonstrate a marked added weight on public safety concerns.' *Mickens-Thomas*, at 391"); Lear v. Benning, Civ. A. No. 03-1046 (W.D. Pa. Doc. 24 finding ex post facto claim moot in light of post-Winklespecht hearing by Board); O'Brian v. Meyers, Civ. A. No. 03-1365 (W.D. Pa. Doc. 21)(finding the Board's re-evaluation of habeas petitioner's eligibility for

parole post-Winklespecht cured any ex post facto violation occurring in Board's pre-Winklespecht parole denials).  Contra Adams v. Kelchner, 2004 WL 2634357, *3 (M.D. Pa. Nov. 12, 2004); Gauche v. Lavan, No. 4:04-CV-1248, 2005 WL 1324859, *10-*11 (M.D. Pa. June 3, 2005).[8]

> b.  Procedural Changes did not violate
> ex post facto

As to Petitioner's attack on some of the procedural changes allegedly made by the 1996 amendments such as the change in frequency of parole consideration from every six months to every year and the change in the number of votes needed and the change in the number of Board members, and such as the fact that he received a review date rather than a parole date, the law seems to be clear that such changes do not violate the ex post facto guaranty.  See e.g.,  California Dep't of Corrections v. Morales, 514 U.S. 499, 509 (1995)(change in California parole hearing

---

[8]  To the extent that Hollawell and Adams v. Kelcher, can be read to stand for the proposition that Mickens-Thomas I held that the 1996 amendment itself violated the ex post facto clause, the court finds them unpersuasive as those courts did not address the issue of how, in the face of the definitive holding in Winklespecht that the amendment did not enact a substantive change in Pennsylvania law regarding parole, the Court of Appeals could, consistent with the fact that it is bound by the Pennsylvania Supreme Court's construction of the state statute,  hold that the statute did create a change and that the change violated ex post facto guaranty.  The federal courts have an affirmative obligation to accept the Pennsylvania State Supreme Court's definitive holding in Winklespecht as to the amendment's meaning.  A Pennsylvania statute means what the Pennsylvania Supreme Court says it means, just as a Congressional statute means what the Third Circuit Court of Appeals says it means, at least within the Third Circuit, unless and until the Federal Supreme Court says the Congressional statute means something different.  See Hutchison v. Marshall, 744 F.2d 44, 46 (6th Cir. 1984)("State statutes mean what state courts say they mean.").

frequency from annual to as infrequently as once every three years did not violate ex post facto guaranty because "[t]he amendment creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the measure of punishment for covered crimes, and such conjectural effects are insufficient under any threshold we might establish under the Ex Post Facto Clause."); Roller v. Gunn, 107 F.3d 227, 236-37 (4th Cir.), *cert. denied*, 522 U.S. 874 (1997)(a change in South Carolina parole statute that changed the number of parole board members from three to four and which would require a convict to obtain the vote of three-fourths as opposed to two-thirds of the members to gain parole, was held not to violate the Ex Post Facto Clause); Gonzalez v. Wynder, NO. CIV.A. 04-5155, 2005 WL 856850 (E.D. Pa., April 12, 2005)(holding that the 1996 amendment changing the number of votes needed for parole did not violate ex post facto guaranty); Vanhook v. Tennis, No. CIV.A. 03-CV-6155, 2005 WL 433460, *9 (E.D. Pa. Feb. 23, 2005) (change in receiving a review date rather than a parole date did not violate ex post facto).  Indeed, as to any of the other procedural changes that Petitioner challenges as being violative of the ex post facto clause, this court finds that such changes "create[] only the most speculative and attenuated risk of increasing the measure of punishment" within the meaning of Morales.  Morales, 514 U.S. at 514.  Accordingly, Petitioner is not entitled to habeas relief based on his ex post facto claims.

## 2.   Sentence Recalculation Claim

It appears that one of the issues Petitioner is raising here is an issue of whether, in its April 15, 2002 order, the Parole Board incorrectly calculated his new maximum expiration date to be August 23, 2006.  Petitioner filed an administrative appeal to the Board from the April 15, 2002 decision, and the Board, by order dated August 15, 2002, denied the administrative appeal, explaining that the calculation was correct.  Petitioner appealed to the Commonwealth Court from the August 15, 2002 order.  See Banks v. Pa. Bd. Of Probation and Parole, No. 2242 CD 2002 (Pa. Cmwlth. petition for review in appellate jurisdiction filed, Monday, September 16, 2002).   While that petition was yet pending before the Commonwealth Court, he filed the instant habeas petition raising the same sentence recalculation claim here that he raised before the Commonwealth Court.  Recently, during the pendency of this habeas petition, the Commonwealth Court decided Petitioner's sentencing calculation error claim adversely to him.   John Wesley Banks v. Pa. Bd. Of Probation and Parole, No. 2242 C.D. 2002 (memorandum opinion filed July 21, 2005).

In that opinion, the Commonwealth Court held as follows:

Next, Counsel argues that recalculation of Banks' maximum expiration should be calculated with a start date of December 1, 2002 the date contained in the Board's recommitment order of February 19, 1993.  We observe, however, that if the Board added the unserved 4 years, 9 months and 28 days for the original 10 to 20 year sentence to December 1, 2002, instead of October 25, 2001, as it did, then the recalculated maximum of

-19-

the original sentence would be September 29, 2007
rather than August 23, 2006.

That Banks still has 4 years, 9 months and 28 days
left on his original sentence as correctly determined
by the Board is supported by the following events.  The
Board's recommitment order of February 19, 1993, as
recorded on December 1, 1992, recommitted Banks as a
convicted parole violator to serve twelve months
backtime and recalculated his maximum date to be
December 1, 2002.  The notice further provided that
Banks be reparoled on December 1, 1993 to his two to
four year sentence.  Thus, the time from December 1,
1992 to December 1, 1993, or one year, was credited to
his original twenty year sentence, leaving him with
nine years left on the sentence inasmuch as he had
initially served ten years of the sentence.
Thereafter, Banks was paroled from his two to four year
sentence on November 25, 1994.

On October 10, 1995, Board agents arrested Banks
for technical parole violations and then reparoled him
on May 10, 1999.  This time of 3 years and 7 months was
credited to his original sentence, leaving Banks a new
unserved remainder of 5 years and 5 months (9 years-3
years and 7 months = 5 years and 5 months.  On March
21, 2001, Board agents arrested Banks for technical
parole violations.  Thereafter, on October 23, 2001,
Banks pleaded guilty to new criminal charges of driving
under the influence of alcohol and was sentenced to
serve 48 hours, which he completed on October 25, 2001.
The period of March 21, 2001 to October 23, 2001, or 7
months and 2 days, was then subtracted from the 5 years
and 5 months remaining on the original sentence
resulting in a new unserved remainder of 4 years, 9
months and 28 days.

Thus, the Board, in its recalculation order, added
the 4 years, 9 months and 28 days to October 25, 2001,
the date Banks became available to the Board after
serving his 48 hour sentence to arrive at a new maximum
expiration date of August 23, 2006.

Banks v. Pa. Bd. Of Probation and Parole, No. 2242 C.D. 2002 (Pa.

Cmwlth. Ct. Slip opinion dated July 21, 2005 at pp. 4-5).[9]

---

[9]  The Court takes judicial notice of the Commonwealth Court's
opinion, for when adjudicating a federal habeas petition, a federal
court may take judicial notice of state court records and/or state
court opinions. See, e.g., United States ex. rel. Martin v. Gramley,
No. 98 C 1984, 1998 WL 312014, at *1 (N.D. Ill. June 3, 1998)(the
federal habeas court took "judicial notice of the opinion of the

Petitioner has not argued nor does the record support a contention that the Commonwealth Court's adjudication of this issue was contrary to or an unreasonable application of United States Supreme Court precedent.  Nor has Petitioner rebutted the presumed correctness of the Commonwealth Court's factual determinations.[10]  Accordingly, this issue does not merit relief.[11]

### E.  Certificate of Appealability

A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2254(c)(2).

Notwithstanding the conclusion reached herein, in light of the conclusions reached in Hollawell and Adams v. Kelchner, 2004 WL 2634357, this court believes that jurists of reason could find

_____

Illinois Appellate Court in this case.").

[10]  While Petitioner could seek review of the Commonwealth Court's decision in the Pennsylvania Supreme Court, as of the writing of this report, he has not done so yet.  However, even if he should do so and therefore not be deemed to have yet completely exhausted his state court remedies with respect to this claim, a federal habeas court may deny a habeas petition notwithstanding a failure to exhaust. See 28 U.S.C. § 2254(b)(2)(a federal court can deny a habeas petition "on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

[11]  The Respondents, without much analysis, contend that Petitioner's claims are time barred because Petitioner did not file his habeas petition until April 14, 2004.  Doc. 12 at 2-3. Because the record is not clear and Respondents have not provided the entire state court record and or docket sheets, and as they provide no argument or facts as to whether Petitioner had filed administrative appeals and/or other petitions in the state courts with respect to the parole denials, and as to why tolling of the statute of limitations is not applicable, the court would not be  able to confidently rest its holding on the statute of limitations grounds.

debatable the exact significance of <u>Mickens-Thomas I</u> for
determining whether Petitioner's ex post facto rights were
violated.  Accordingly, a certificate of appealability should be
granted to address the issues of: (1) Whether the 1996 amendment
to the Pennsylvania Parole statute, resulting in the current 61
P.S. § 331.1, violates the ex post facto clause and if so, what
is the significance of the Pennsylvania Supreme Court's decision
in <u>Winklespecht</u> and its progeny in light of its holding that the
amendment worked no substantive change; and (2) Whether the
interpretation/application of the amendment by the Board violated
the ex post facto clause and whether post-<u>Winklespecht</u> and its
progeny that interpretation/application has been remedied such
that post-<u>Winklespecht</u> and its progeny, the Parole Board's
interpretation/application can no longer violate that ex post
facto clause?

     Petitioner is cautioned that should the district court adopt
this court's report and recommendation, Petitioner must file a
timely notice of appeal if he wishes to appeal the District
Court's decision.  <u>See</u> 16A Charles Alan Wright & Arthur R.
Miller, Fed. Prac. & Proc. § 3968.1 (3d ed. 1999)("The notice of
appeal must, of course, be timely filed, with or without the
certificate" of appealability).

III.  <u>CONCLUSION</u>

     In accordance with the Magistrates Act, 28 U.S.C. §
636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are
allowed ten (10) days from the date of service to file written

objections to this report.  Any party opposing the objections
shall have seven (7) days from the date of service of the
objections to respond thereto.  Failure to timely file objections
may constitute a waiver of any appellate rights.

Respectfully submitted,

/s/ Amy Reynolds Hay
AMY REYNOLDS HAY
United States Magistrate Judge

Dated:  4 November, 2005

cc:  The Honorable Donetta Ambrose
     Chief United States District Court Judge

     John Wesley Banks
     AP-2569
     SCI Retreat
     660 State Route 11
     Hunlock Creek, PA 18621

     Craig E. Maravich
     Office of the Attorney General
     564 Forbes Avenue
     6th Floor, Manor Complex
     Pittsburgh, PA 15219